**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

|  |  |
|---|---|
| DALE E. WALLACE,<br><br>              Plaintiff,<br>vs.<br><br>CONNIE WINNER, PAUL REES,<br>DANIEL HASH, TRISTAN KOHUT,<br>and CINDY HINER,<br><br>              Defendants. | **CV 17-103-BMM-JTJ**<br><br>**ORDER ADOPTING MAGISTRATE**<br>**JUDGE'S FINDINGS AND**<br>**RECOMMENDATIONS** |

**INTRODUCTION**

Dale Wallace ("Wallace") filed a Complaint alleging Defendants were deliberately indifferent to his serious medical needs when they delayed surgery for his broken jaw for approximately two years. (Doc. 2.) Defendants Dr. Daniel Hash, DDS, Dr. Hash's supervisor Cindy Hiner and her supervisor Connie Winner, and Drs. Tristan Kohut and Paul Rees moved for summary judgment. (Doc. 25.)

United States Magistrate Judge John Johnston issued Findings and Recommendations. (Doc. 36.) Judge Johnston recommends that the Court grant summary judgment as to Defendants Winner, Hiner, Kohut, and Rees. (Doc. 36 at 53.) Judge Johnston recommends that the Court deny summary judgment as to Defendant Dr. Hash regarding Dr. Hash's treatment of Wallace between November

1

2014 and June 2016. (Doc. 36 at 53.) Dr. Hash filed objections to Judge Johnston's Findings and Recommendations. (Doc. 41.) Wallace filed separate objections to Judge Johnston's Findings and Recommendations. (Doc. 42.) Defendants Winner and Hiner filed a response to Wallace's objections. (Doc. 50.)

## BACKGROUND

A police vehicle struck Wallace during his arrest in Oregon on January 3, 2014. (Doc. 2 at 3, ¶ 12.) Wallace fractured his right arm, left leg, jaw, and shattered numerous teeth. (*Id.*) Doctors at the Oregon Health and Science University performed surgery on Wallace's mandible and inserted a steel plate in January 2014. (Defendants' Statement of Undisputed Facts, Doc. 26 (hereinafter "SUF") at ¶ 4.) Law enforcement subsequently transferred Wallace to Montana State Prison (MSP), where he has been incarcerated since October 7, 2014. (SUF at ¶ 2.) Wallace explained his dental problems to MSP medical staff when he arrived in October 2014. (*Id.* at ¶ 3.)

## I.     October 2014 to June 2015

Wallace sent a Health Care Request form (hereinafter referred to as a "kite") to the dental department on October 9, 2014, explaining his jaw issues and requesting that the dentist remove some of his teeth if possible. (SUF at ¶ 5; Doc.

2

26-1 at 56.) Dental staff responded to Wallace the next day, noting that Wallace was already scheduled for a dental intake exam. (SUF at ¶ 5.)

A physician's assistant (PA) examined Wallace on October 9, 2014. Wallace reported jaw pain. The PA noted that Wallace had a deformity in his jaw, ordered acetaminophen for pain, and requested Wallace have an appointment for a pain management plan. (SUF at ¶ 6.) Wallace sent additional kites to the medical department and the dental department on October 11, 2014, and October 27, 2014, complaining about pain in his jaw and teeth. (SUF at ¶¶ 8, 10; Doc. 26-1 at 55; Doc. 26-3 at 17.)  MSP staff responded to Wallace's kites. (*Id.*) Wallace sent a kite to the dental department on November 13, 2014, reporting that a chunk of his tooth broke away. (SUF at ¶ 13.) Medical staff evaluated Wallace the next day, noted that Wallace needed a referral to a dental provider, and gave Wallace pain relievers. (*Id.*) Wallace filled out a medical history on November 18, 2014, in which he noted his jaw injuries and pain. (*Id.* at ¶ 14.)

Wallace had an initial dental appointment on November 19, 2014. (SUF at ¶ 15.) The provider noted that Wallace's mandible was fractured. Dr. Hash recommended that dental see Wallace again in 1-3 weeks. (*Id.*) Wallace's initial treatment plan included restoring his broken and decayed teeth and developing a periodontal treatment plan. (*Id.* at ¶ 17.)

3

Wallace sent a kite complaining about ear pain "where [his] upper right jaw was broken & pushed up into [his] ear drum" on December 13, 2014. (Doc. 26-1 at 50.) Medical assessed Wallace the next day, December 14, 2014, and noted, "Will Dental take a Look??" (*Id.* at 51.) Wallace sent kites to dental on January 8, 2015, and January 13, 2015, complaining of mouth, jaw, and tooth pain. (*Id.* at 48-49.) Dr. Brent Goldthorpe saw Wallace for a sharp pain under Wallace's gums on January 15, 2015. (SUF at ¶ 19.) Wallace declined exploratory surgery. (*Id.*) Wallace sent three additional kites to dental in the spring of 2015. (Doc. 26-1 at 42-43, 47.) Wallace had numerous dental appointments between February 2015 and May 2015. (SUF at ¶ 19.)

## II.    June 2015 to June 2016

Wallace sent a kite to dental on June 9, 2015, complaining of ear and upper jaw pain. (SUF at ¶ 20; Doc. 26-1 at 40.) Dr. Greg Christensen evaluated Wallace on June 16, 2015. (SUF at ¶ 22.) Dr. Christensen noted crepitus in Wallace's right temporomandibular joint (TMJ) from the January 2014 injury. Dr. Christensen indicated that he wanted Dr. Paul Sims, an oral surgeon, to consult on Wallace's crepitus and TMJ. (*Id.* at ¶ 23.)

Dr. Sims evaluated Wallace on July 10, 2015. (SUF at ¶ 24.) Dr. Sims noted that Wallace had bilateral TMJ "condyle fractures that were not treated with closed

reduction." (*Id.*) Dr. Sims determined that Wallace needed a referral to Dr. Clark Taylor, an oral surgeon in Missoula who specializes in complex TMJ surgeries. (*Id.* at ¶ 26.) An "MSP Referral Form" indicates that Dr. Hash authorized the referral on July 10, 2015. (Doc. 26-3 at 30.) An "MT DOC Dental Services Request" form indicates that Dr. Hash approved the referral on July 27, 2015. (Doc. 26-1 at 67.)

Wallace sent a kite to dental on September 23, 2015, stating that Dr. Taylor had not yet evaluated him. (SUF at ¶ 30; Doc. 26-1 at 39.) Wallace stated, "My jaw & ear have been bugging me & hurting quite a lot lately. Is this normal or can anything be done?" (SUF at ¶ 30.) Dental responded the next day and informed Wallace that they had confirmed his appointment with Dr. Taylor. (*Id.*) Dr. Taylor saw Wallace in Missoula on October 15, 2015. (SUF at ¶ 32.) Dr. Taylor recommended a TMJ MRI scan. (SUF at ¶ 33.) Dr. Taylor stated that if the scan confirmed his clinical impression, Wallace would be a candidate for TMJ surgery. (*Id.*) Dr. Taylor's evaluation notes concluded, "[w]e will be awaiting receipt of MRI scan." (*Id.*) Dr. Taylor's office sent the evaluation notes to MSP on October 21, 2015. (SUF at ¶ 34.)

Wallace sent a kite to dental on November 3, 2015, asking for an appointment to talk about Dr. Taylor's report. (SUF at ¶ 35.) Dr. Starr met with

Wallace on November 10, 2015, to discuss Dr. Taylor's report. (*Id.* at ¶ 36.) Dr. Starr submitted two Dental Services Request forms that day. (*Id.* at ¶ 37.) The first form requested an MRI on Wallace's TMJ joint. (*Id.* at ¶ 38.) Dr. Hash testified that the request for an MRI was approved on the same day. (*Id.* at ¶ 39.) The second form requested TMJ surgery, contingent on the MRI results. (*Id.* at ¶ 40.) Wallace had two more dental appointments in 2015. (*Id.* at ¶ 41.)

Wallace sent a kite to dental on December 27, 2015, recounting his jaw issues, stating that his jaw had begun to hurt more over the past month, and asking about whether his appointment with Dr. Taylor was scheduled. (Doc. 26-1 at 36; SUF at ¶ 43.) Dental responded on December 29, 2015, stating that the request for an appointment with Dr. Taylor had been submitted and was "waiting for Director's approval." (SUF at ¶ 43.) Wallace sent another kite to dental on January 6, 2016, stating that he was having pain and limited movement in his jaw and requesting information. (Doc. 26-1 at 35; SUF at ¶ 46.)

Dr. Taylor's office staff had emailed Dr. Hash on December 10, 2015, to follow up on Wallace's case and ask if Wallace's MRI had been scheduled or completed. (Doc. 26-2 at 1.) Dr. Taylor's office staff emailed Dr. Hash again on January 6, 2016, to check on the status of Wallace's MRI. (Doc. 26-2 at 2.) On January 11, 2016, Dr. Hash forwarded the December 10, 2015, email to himself as

6

a reminder to respond. (SUF at ¶ 42.) Dr. Hash responded on January 13, 2016, explaining that the scheduling team had not yet scheduled the MRI, but that they would soon. (Doc. 26-2 at 2; SUF at ¶ 45.)

Dental responded to Wallace's January 6, 2016 kite on January 14, 2016, stating, "[w]e have you scheduled for an MRI getting appointments can take time. Thank you." (SUF at ¶ 46.) Wallace sent a kite to dental on February 3, 2016, asking what number he was on the list to get partial dentures. (Doc. 26-1 at 34.) Wallace had an MRI in Butte on February 9, 2016. (SUF at ¶ 47.) The MRI report stated that Wallace had "[s]evere degenerative change of the right mandibular condyle and remodeling of the temporal eminence with limited range of motion but not meniscal trapping with jaw opening. Mild osteoarthritis of the left mandibular condyle." (*Id.* at ¶ 48.) MSP received the MRI report on February 16, 2016, and immediately sent the report to Dr. Taylor's office. (*Id.* at ¶ 49.)

Wallace sent a kite to dental on February 29, 2016, complaining about jaw pain and asking about the "next step." (Doc. 26-1 at 33; SUF at ¶ 50.) Dental responded on March 2, 2016, "I'm talking with Dr. Taylor and the dentist. Will schedule you soon to bring you up and discuss what's going on." (SUF at ¶ 50.) A note in Wallace's chart, dated March 2, 2016, stated, "[s]ent Dr. [Taylor's] office an email following up on diagnostic after MRI scan." (SUF at ¶ 51.)

Wallace sent a kite to dental on March 20, 2016, reporting that his teeth were getting more painful and sensitive, that chewing food was difficult, and that hot and cold bothered. (Doc. 26-1 at 32; SUF at ¶ 52.) Wallace asked, "[i]s there anything that can be done?" (SUF at ¶ 52.) Dental staff responded on March 22, 2016, stating that they were talking with Dr. Taylor about Wallace's jaw, that Wallace was scheduled for fillings, and that his name was nearing the top of the denture list. (*Id.*) Dr. Starr saw Wallace on March 29, 2016, and May 10, 2016, for routine restorative dental treatment. (*Id.* at ¶ 54.)

Wallace sent a kite to dental on May 27, 2016, asking if there was any new information about his jaw surgery. (Doc. 26-1 at 30; SUF at ¶ 55.) Wallace reported that his jaw was hurting more and more over time. Dental responded on May 31, 2016, stating that they would investigate and then bring Wallace in to finish his dental work and discuss what they discovered. (SUF at ¶ 55.)

### III.    June 2016 to January 2017

Kelly Bigelow from Dr. Taylor's office emailed Dr. Starr on June 1, 2016, about a billing problem with the anesthesiologist fee for Wallace's surgery, stating it "would be an additional $1500 fee." (SUF at ¶ 56.) Bigelow asked whether the State would cover that cost. (*Id.*) Dr. Christensen noted the following item in

Wallace's chart on June 2, 2016: "Emails sent to Dr. Hash/Crystal regarding follow up [at Dr. Taylor's office]. Follow up on emails sent." (*Id.* at ¶ 57.)

Connie Winner is the Administrator of the Clinical Services Division of the Montana Department of Corrections. (SUF at ¶ 50.) Dr. Starr forwarded Bigelow's June 1, 2016, inquiry to Winner on June 6, 2016. (*Id.* at ¶ 58.) Dr. Starr asked Winner how to respond to Bigelow, noting that Wallace was "the inmate Dr. Taylor was in mid treatment on when the Medicaid switch happened." (*Id.*)

Dr. Starr's mention of the "Medicaid switch" was a reference to the HELP Act, which went into effect on January 1, 2016. (*Id.* at ¶ 63.) The HELP Act brought inmates under the Medicaid umbrella and required DOC to reimburse health care providers for services billed at the Medicaid rate. Outside health providers therefore needed to be Medical providers, or accept payment under the Medicaid fee schedule, to work with DOC. (*Id.*)

Winner sent Dr. Starr's inquiry to her supervisor Cindy Hiner, and asked Hiner how to resolve the issue. Hiner spoke with Dr. Taylor's office and responded back to Winner:

> Here is the issue: the anesthesiologist this office utilizes is from Denver and is not covered under Medicaid in Montana. Dr. [Taylor's] office is requesting the Department of Corrections approve to pay for the anesthesiologist that is not covered through Medicaid. Please review and advise how you would like to proceed.

9

(SUF at ¶ 61.) Winner responded, including Dr. Hash on the email, and asked Hiner if there was an anesthesiologist in Montana who took Medicaid. (*Id.* at ¶¶ 64-65.) Hiner responded that Dr. Taylor's office told her they only used this one anesthesiologist at their practice. (*Id.*)

Wallace sent a kite on June 7, 2016, about the "constant pain and discomfort [he was] constantly in due to . . . [his] still broken jaw." The Director of Nursing responded on June 10, 2016, telling Wallace that she would make sure his jaw issues were addressed. (SUF at ¶ 66.) Dr. Tristan Kohut saw Wallace in the MSP Infirmary on June 29, 2016. (*Id.* at ¶ 68.) Dr. Kohut prescribed Wallace pain medication and noted the following: "Jaw complaints. Oral surgery? Need? Will discuss . . . ." (*Id.*; Doc. 26-3 at 16.) Wallace sent another kite on July 11, 2016, complaining about his jaw discomfort. Dental responded the next day and told Wallace that they were still talking to Dr. Taylor's office. (SUF at ¶ 69.)

Hiner emailed Dr. Hash and Winner on July 13, 2016, asking if the anesthesiologist issue had been resolved. (SUF at ¶ 70.) Dr. Hash responded that he had called Dr. Taylor's office, but they had not called back yet. (*Id.*) Dr. Taylor's office responded that same afternoon, indicating that they were not sure if they could accept Wallace because of the Medicaid payment restrictions. Based on

that information, Dr. Hash asked the dental clinic to put Wallace on his follow-up list for the coming Monday when he would be at MSP. (*Id.* at ¶ 71.)

Winner emailed Dr. Hash and Hiner, among others, on July 14, 2016, recommending that they investigate whether another oral surgeon and/or anesthesiologist could perform the work at the Medicaid rate. (SUF at ¶ 76.) She noted that they should exhaust all options before agreeing to a non-Medicaid rate. (*Id.*) Dr. Hash responded that he would look into it. (*Id.* at ¶ 78.)

Winner and Dr. Hash emailed back and forth between July 19, 2016, and July 21, 2016, discussing Wallace's case and whether other anesthesiologists in Montana would accept the Medicaid rate. (SUF at ¶¶ 79-80.) Dr. Taylor's office sent Dr. Hash an estimate of charges for Wallace's treatment on July 20, 2016. (*Id.* at ¶ 81.) Dr. Hash, Winner, Hiner, and others met and discussed Wallace's case on July 25, 2016. (*Id.* at ¶ 82.) Winner emailed Dr. Hash on July 26, 2016, explaining that DOC had to pay health care providers at the Medicaid rate and needed to exhaust all possibilities before paying at a higher rate. (*Id.* at ¶ 85.) Dr. Hash emailed Dr. Taylor's office on July 26, 2019, asking if Dr. Taylor could perform Wallace's surgery at a hospital instead of Dr. Taylor's surgery center. (Doc. 26-2 at 24; SUF at ¶ 86.)

Dr. Kohut saw Wallace on July 29, 2016, for a follow-up appointment regarding pain management. (SUF at ¶ 87.) Dr. Kohut referred Wallace to dental and asked dental to review Wallace's jaw MRI. Dental received Dr. Kohut's referral on August 1, 2016, and notified Dr. Hash. (*Id.*) Dr. Hash, Winner, Hiner, and others continued to discuss Wallace's case with one another and with Dr. Taylor's office throughout August 2016. (*Id.* at ¶¶ 93-94.)

Wallace sent a kite to dental on August 27, 2016, complaining of the constant pain in his jaw and asking what was being done. (Doc. 26-1 at 27; SUF at ¶ 96.) Dental staff responded that Wallace was scheduled for an appointment to discuss what was going on. (SUF at ¶ 96.) Wallace sent another kite to dental on September 13, 2016, recounting his jaw pain and expressing concern that MSP was not addressing his situation. (Doc. 26-3 at 37; SUF at ¶ 98.) MSP staff responded on September 16, 2016, that they were addressing Wallace's situation and that they would see him to discuss the pain. (SUF at ¶ 98.)

Wallace sent another kite, which medical received on September 15, 2016, complaining of jaw pain and expressing concern about his treatment at MSP. (Doc. 26-3 at 36; SUF at ¶ 99.) Wallace stated that MSP was intentionally neglecting him—Wallace emphasized that he needed corrective surgery and was in constant pain. (Doc. 26-3 at 36.) Wallace asked, "What is going on? Why are you

intentionally making me suffer?" Wallace concluded, "I am in pain & suffering. Please help." (*Id.*) MSP staff responded that that they were addressing Wallace's jaw issue and that they would see Wallace to discuss the pain. (SUF at ¶ 99.)

Dr. Hash contacted Dr. Taylor directly on September 19, 2016. (SUF at ¶ 100.) Dr. Hash told Dr. Taylor that the anesthetist did not have to be a Medicaid provider if the anesthetist agreed to accept the Medicaid rate. Dr. Taylor agreed to move forward with that plan. Dr. Hash told Winner and Hiner about Dr. Taylor's agreement. (*Id.*) Dr. Hash approved the Dental Services Request for "TMJ Surgery/Treatment" and directed the scheduling staff to schedule Wallace's appointment with Dr. Taylor. (*Id.* at ¶ 102.) Dr. Hash inadvertently checked the "Hold" box on the request form, but noted in the form's comments section, "[a]pproved for TMJ surgery and any needed follow-up care." (*Id.* at ¶ 103.) Dr. Hash sent a follow-up email to Dr. Taylor's office staff, summarizing the doctors' conversation and confirming that Dr. Hash had approved the surgery. (*Id.* at ¶ 104.)

Wallace sent a kite to dental on September 19, 2016, complaining of jaw pain and asking where he was on the list for partial dentures. (Doc. 26-1 at 26; SUF at ¶ 108.) Dr. Hash saw Wallace on September 20, 2016, to discuss the TMJ surgery and treatment plan. (SUF at ¶ 108.) Dr. Hash saw Wallace for a second TMJ surgery consultation on September 29, 2019. (*Id.* at ¶ 112.)

Dr. Taylor's billing specialist emailed Dr. Hash on September 22, 2016, requesting a written statement that DOC had approved Wallace's procedure and that Medicaid would pay for the procedure at Medicaid rates. (SUF at ¶ 109.) Dr. Hash forwarded the email to Russ Danaher, who had been involved in the conversations surrounding Wallace's care, on September 26, 2016. (*Id.* at ¶ 110.) Danaher updated Dr. Hash and Hiner on October 13, 2016, regarding Danaher's conversations with Dr. Taylor's office. (*Id.* at ¶ 116.) Danaher and Dr. Taylor's office staff had determined that it was likely best for the surgery to be an in-patient procedure. (*Id.*)

Wallace sent a kite to dental on October 23, 2016, indicating that his jaw pain was getting worse and asking for information. (SUF at ¶ 117; Doc. 26-1 at 25.) Dental staff responded on October 25, 2016, that they were scheduling Wallace for surgery. (SUF at ¶ 117; Doc. 26-1 at 25.) Dr. Taylor's office faxed records to DOC on October 24, 2016, requesting preauthorization for the surgery. (SUF at ¶ 118.)

Wallace sent a kite to dental on October 28, 2016, indicating that his pain medicine was no longer helping with his jaw pain and asking for information. (SUF at ¶ 119; Doc. 26-1 at 24.) Dental staff replied on November 2, 2016, that they were still trying to work with Dr. Taylor's office to schedule the procedure.

(SUF at ¶ 119.) Dr. Hash sent a follow-up email to scheduling staff on November 14, 2016, asking about his September 19, 2016, submission to schedule Wallace with Dr. Taylor. (*Id.* at ¶ 121.) There proved to be a scheduling issue with Dr. Taylor performing the surgeries as in-patient procedures instead of at his surgery center. (*Id.*) Dr. Hash called Dr. Taylor's clinic on November 14, 2016. (*Id.* at ¶ 123.) Dr. Hash saw Wallace for a consultation on November 15, 2016. (*Id.* at ¶ 124.) Dr. Hash requested a follow-up consultation in 2-3 weeks. (*Id.*)

Dr. Hash emailed Dr. Taylor's office staff on December 5, 2016, with a detailed authorization of Medicaid coverage for general anesthesia. (SUF at ¶ 126.) On December 8, 2016, Dr. Hash confirmed with scheduling staff that the Medicaid reimbursement issues were resolved and asked the scheduling staff to contact Dr. Taylor's office and schedule Wallace's surgery as soon as possible. (*Id.* at ¶ 128.) Dr. Hash saw Wallace for a quick consultation on December 8, 2016. (*Id.* at ¶ 129.)

The scheduling staff reported to Dr. Hash on December 13, 2016, that they were still having trouble scheduling Wallace's surgery with Dr. Taylor. (SUF at ¶ 130.) Dr. Hash called Dr. Taylor's office to discuss the scheduling issues on December 19, 2016. (*Id.* at ¶ 133.) Thereafter, Dr. Hash and other MSP staff communicated with Dr. Taylor's office regarding Medicaid reimbursement rates

and whether DOC or Medicaid would reimburse Dr. Taylor. (*Id.* at ¶ 136.) Dr.

Hash explained that DOC would reimburse the anesthesiologist at the Medicaid

rate, regardless of whether the provider or the facility were approved by Medicaid.

(*Id.* at ¶¶ 136-137.) Dr. Taylor's office staff informed Dr. Hash that they would

move forward with the Medicaid reimbursement rate. (*Id.* at ¶ 138.)

Dr. Hash notified scheduling staff of Dr. Taylor's agreement and instructed

them to finish scheduling Wallace's surgery. (SUF at ¶ 140.) Scheduling staff

responded to Dr. Hash on December 20, 2019, stating that Wallace was scheduled

for January 9, 2017. (*Id.* at ¶ 141.) Dr. Hash met with Wallace on December 21,

2016, and informed Wallace that scheduling staff had scheduled Wallace's surgery

with Dr. Taylor. (*Id.* at ¶ 143.)

Dr. Paul Rees saw Wallace on January 5, 2017, for a pre-operation

evaluation. (SUF at ¶ 146.) Dr. Rees cleared Wallace for surgery. (*Id.* at ¶ 147.) Dr.

Taylor performed TMJ surgery on Wallace at Dr. Taylor's surgery center on

January 9, 2017. (*Id.* at ¶ 150.) Wallace returned to MSP and remained in the

infirmary until January 10, 2017. (*Id.* at ¶ 151.) Dr. Hash evaluated Wallace on

January 10, 2017, and reported that Wallace was doing well. (*Id.* at ¶ 152.) Wallace

participated in rehabilitation through late-February 2017. (*Id.* at ¶ 155.)

Wallace had begun a grievance process regarding his dental care at MSP by submitting an informal resolution form on June 13, 2016. (Doc. 26-4 at 8.) Wallace filed a formal grievance on June 30, 2019. (Doc. 26-4 at 6.) Wallace filed an appeal to the Warden on September 9, 2019. Wallace was advised that Dr. Hash would follow up with Wallace in two or three weeks. (Doc. 26-4 at 5.) Wallace filed an appeal to the corrections director on September 27, 2016. (Doc. 26-4 at 3.) Winner responded to Wallace's appeal to the corrections director on October 13, 2016. (SUF at ¶¶ 114, 115.) Winner mistakenly stated in her response that Wallace's dental issues were already discussed. (*Id.*)

## DISCUSSION

The Court reviews de novo Findings and Recommendations timely objected to. 28 U.S.C. § 636(b)(1). The Court reviews for clear error the portions of the Findings and Recommendations to which no party specifically objects. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

### A. Defendant Dr. Hash's Objections

Dr. Hash moved for summary judgment on Wallace's deliberate indifference claim. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). Judge Johnston found that Dr. Hash was not entitled to summary judgment regarding Wallace's deliberate indifference claim between November 2014 and June 2016. (Doc. 36 at 45-51.) Dr. Hash objects to that finding.

A plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" to prove a § 1983 claim for violating of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff must show both that his medical needs were objectively serious, and that the defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992) (on remand).

The parties do not dispute that Wallace's jaw condition presented a serious medical need. (Doc. 36 at 42.) The issue is whether Defendants possessed a culpable state of mind; that is, whether Defendants were deliberately indifferent. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The Ninth Circuit requires proof that the defendant consciously disregarded an excessive risk of which he was aware. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012). Deliberate indifference is established only where a defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391

F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted).

A delayed medical procedure can serve as the basis for a deliberate indifference claim. *See Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989). Delay in treatment standing alone does not, however, constitute an Eighth Amendment Violation. *Id.* Deliberate indifference is established only if prison officials were aware that a dental issue was causing severe pain and permanent damage during a delay. *Id.*

### 1. Dr Hash's treatment of Wallace from November 2014 to June 2015

Wallace reported his jaw injury and pain when he arrived at MSP in October 2014. The record reflects that Dr. Hash recommended that Wallace have another dental appointment one to three weeks after Wallace's initial dental appointment on November 19, 2014. Wallace sent numerous kites complaining of jaw pain throughout the spring of 2015. The parties dispute whether Dr. Hash knew about Wallace's injury in November 2014 and whether Dr. Hash knew about Wallace's spring 2015 kites.

The Court notes that Dr. Hash at the very least, was familiar enough with Wallace's situation in November 2014 to recommend that Wallace have another dental appointment in one to three weeks. Genuine issues of material fact exist as to Dr. Hash's knowledge of Wallace's jaw injury between November 2014 and June 2015. Those genuine issues of material fact defeat summary judgment.

### 2. Dr Hash's treatment of Wallace from July 2015 to October 2015

Dr. Hash approved Wallace's referral to Dr. Taylor in July 2015. Wallace did not see Dr. Taylor until October 2015. Dr. Hash's role, if any, in the delay of Wallace's treatment between July 2015 and October 2015 presents a genuine issue of material fact for the jury to evaluate.

### 3. Dr Hash's treatment of Wallace from October 2015 to February 2016

Dr. Taylor examined Wallace on October 15, 2015. Dr. Taylor suggested that Wallace have an MRI and, depending on the MRI results, have surgery. Dr. Taylor's office sent the evaluation notes to MSP on October 21, 2015. (SUF at ¶ 34.) Dr. Hash did not act after he received Dr. Taylor's report. Wallace sent a kite to dental on November 3, 2015, asking to discuss Dr. Taylor's report. Dr. Starr saw Wallace and submitted two dental services request forms, one for an MRI and

the other for TMJ surgery, on November 10, 2015. Dr. Hash testified that he approved the MRI request that day.

Dr. Taylor's office sent Dr. Hash two emails about Wallace's MRI in December 2015. Dr. Hash did not respond or otherwise follow up on Wallace's MRI appointment until January 2016. Wallace's MRI occurred on February 9, 2016. There exist genuine issues of material fact as to Dr. Hash's role, if any, in the delay between Wallace's appointment with Dr. Taylor on October 15, 2015, and Wallace's MRI on February 9, 2016.

### 4. Dr Hash's treatment of Wallace from February 2016 to June 2016

MSP sent the MRI results to Dr. Taylor's office on February 16, 2016. Wallace's case then remained stagnant until June 2016, when Dr. Taylor's office emailed Dr. Starr with billing issues. Wallace had sent numerous kites to dental between February 2016 and June 2016, complaining of continued and increased jaw pain. Wallace also received routine restorative dental treatments in March 2016 and in May 2016. Dr. Hash's role, if any, in the delay between Wallace's MRI in February 2016, and when Wallace's case gained momentum in June 2016, presents a genuine issue of material fact.

The record reveals genuine issues of facts regarding whether Dr. Hash was deliberately indifferent to Wallace's serious medical needs between November

2014 and June 2016. There is not sufficient evidence to establish a genuine issue of material fact, however, regarding whether Dr. Hash was deliberately indifferent to Wallace's serious medical needs after June 2016. The Court reviewed carefully Wallace's medical and dental records. There is significant evidence that Dr. Hash was directly and extensively involved in communicating with Dr. Taylor's office, resolving the billing issues, and scheduling Wallace's surgery.

There also remains a genuine issue of material fact regarding whether the delay in Wallace's surgery affected the surgery's success and caused Wallace permanent damage. Wallace started having ear pain in March 2017 and the pain became progressively worse through August 2017. (Doc. 26-1 at 69.) Dr. Taylor performed another procedure on Wallace in September 2017. (*Id.* at 70.) Dr. Taylor has asserted that a delay in surgery does not harm or damage the joint and does not make future treatment more difficult. (SUF at ¶ 164.) Dr. Taylor specifically stated, "[a]ny alleged delay in treatment of Mr. Wallace between my evaluation and the eventual surgery would not have affected his prognosis or outcome." (*Id.* at ¶ 166.) Wallace has presented correspondence with medical providers suggesting the delay may have affected the surgery's success. (Doc. 31-1 at 15.) Wallace also has presented evidence of his pain and suffering during the delay.

The record reveals genuine issues of material fact regarding whether Dr. Hash was deliberately indifferent to Wallace's serious medical needs between November 2014 and June 2016. The Court will adopt Judge Johnston's recommendation that the Court deny Dr. Hash's motion for summary judgment regarding Dr. Hash's treatment of Wallace between November 2014 and June 2016.

## B. Plaintiff Wallace's Objections

Wallace objects to two of Judge Johnston's findings. (Doc. 42 at 2.) Wallace first objects to Judge Johnston's finding that no genuine issue of fact exists regarding whether Winner and Hiner were deliberately indifferent to Wallace's medical needs between June 2016 and January 2017. (*Id.* at 2.) Wallace argues that Winner and Hiner did not make an actual effort to investigate the billing issues or research additional medical providers after they became aware of his medical issues in June 2016. (*Id.* at 2-3.)

The record demonstrates, however, that Winner and Hiner were actively involved in seeking treatment for Wallace starting in June 2016. *See supra* at III. Nothing in the record establishes that Winner or Hiner disregarded Wallace's serious medical needs. *See Toguchi v. Chung*, 391 F.3d at 1057. To the contrary, the record is replete with emails from both Winner and Hiner inquiring about the

status of Wallace's treatment and suggesting alternatives. There are no genuine issues of fact regarding whether Winner and Hiner were deliberately indifferent in their efforts to secure treatment for Wallace. The undisputed facts support a finding that Winner and Hiner did not act deliberately indifferent toward Wallace.

Second, Wallace objects to Judge Johnston's finding that DOC was required to comply with Montana law and investigate ways to pay the anesthesiologist fee at the Medicaid rate. (Doc. 42 at 2.) Mont. Code Ann. § 53-6-1312 provides that DOC should reimburse inmate's health care services at Medicaid rates. The Court cannot conclude that Winner and Hiner acted deliberately indifferent towards Wallace's serious medical needs when they noted the Medicaid reimbursement rate and attempted to secure Wallace's treatment at that rate. Winner and Hiner did not act deliberately indifferent toward Wallace by attempting to comply with Montana law and secure Wallace's treatment at the Medicaid rate. The Court will adopt Judge Johnston's Findings and Recommendations (Doc. 36) in full.

**ORDER**

Accordingly, **IT IS ORDERED** that:

1.      Judge Johnston's Findings and Recommendations (Doc. 36) are **ADOPTED IN FULL**.

2.　　Defendants' Motion for Summary Judgment (Doc. 25) as to Defendants Winner, Hiner, Kohut, and Rees is **GRANTED**.

3.　　Defendants' Motion for Summary Judgment (Doc. 25) as to Defendant Hash regarding Hash's treatment of Wallace between November 2014 and June 2016 is **DENIED**.

DATED this 23rd day of January, 2020.

_____
Brian Morris
United States District Court Judge